Filed 8/27/14  In re Pulido CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re MICHAEL PULIDO,<br><br>on Habeas Corpus. | A136960<br><br>(San Mateo County<br>Super. Ct. No. SC29805) |

## INTRODUCTION

In 1994, petitioner Michael Pulido was sentenced to life without the possibility of parole for crimes he committed when he was 16 years old.  In our original opinion in this matter filed July 15, 2013, we granted petitioner habeas relief under *Miller v. Alabama* (2012) 567 U.S. ____ [183 L.Ed.2d 407, 132 S.Ct. 2455] (*Miller*), which held that mandatory life imprisonment without parole (LWOP) for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against cruel and unusual punishment.  We vacated petitioner's sentence of life without possibility of parole and remanded for resentencing.

The People petitioned the Supreme Court for review.  (*In re Michael Pulido*, review granted October 16, 2013.)  The Court granted the People's petition pending resolution of similar issues in *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*).  (Appellate case no. S206365; see also appellate case no. S206771.)  On May 5, 2014, our Supreme Court issued its opinion. (*Gutierrez*, *supra*, 58 Cal.4th 1354.)  On July 10, 2014, the Court transferred petitioner's case to us with directions to vacate our prior decision and reconsider the cause in light of *Gutierrez.*

1

We asked the parties for further briefing to address the effect of *Gutierrez* on our previous ruling and disposition. Specifically, we asked the parties to address "whether the trial court record complies with the *Gutierrez* holding that 'the trial court must consider all relevant evidence bearing on the "distinctive attributes of youth" discussed in *Miller* and how those attributes "diminish the penological justifications for imposing the harshest sentences on juvenile offenders." ' (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1390, quoting *Miller v. Alabama* (2012) 567 U.S. ____ [132 S.Ct. 2455, 2465].)" Having independently reviewed the sentencing transcript and other documents relevant to the sentencing court's decision in light of the supplemental briefing, we now re-affirm our original decision, vacate the sentence, and remand for resentencing.

## DISCUSSION

*Gutierrez* held the availability (after serving 15 years of an LWOP sentence) of a sentence recall mechanism pursuant to Penal Code section 1170, subdivision (d)(2) does not preclude a *Miller* challenge to that sentence on direct review. (*Gutierrez, supra*, 58 Cal.4th at pp. 1384, 1386-1387.) This court came to the same conclusion, and the parties agree this court's prior remand order is consistent with that holding.

*Gutierrez* also held "that the trial court must consider all relevant evidence bearing on the 'distinctive attributes of youth' discussed in *Miller* and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.' (*Miller, supra,* 567 U.S. at p. ____, [132 S.Ct. at p. 2465].)" (*People v. Gutierrez, supra,* 58 Cal.4th at p. 1390.) The Court distilled from *Miller* the following five relevant considerations: "First, a court must consider a juvenile offender's 'chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.' [Citation.] . . . [¶] Second, a sentencing court must consider any evidence or other information in the record regarding 'the family and home environment that surrounds [the juvenile]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional.' [Citation.] . . . [¶] Third, a

2

court must consider any evidence or other information in the record regarding 'the circumstances of the homicide offense, including the extent of [the juvenile defendant's] participation in the conduct and the way familial and peer pressures may have affected him.' [Citation.]  Also relevant is whether substance abuse played a role in the juvenile offender's commission of the crime. [Citation.]  [¶]  Fourth, a court must consider any evidence or other information in the record as to whether the offender 'might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [Citations.]'  [Citation.] [¶]  Finally, a sentencing court must consider any evidence or other information in the record bearing on 'the possibility of rehabilitation.' [Citations.] The extent or absence of 'past criminal history' is relevant here. [Citation.]  [¶]  Although courts elsewhere have enumerated or categorized these factors in different ways, we note that the emerging body of post-*Miller* case law has uniformly held that a sentencing court must consider the factors discussed above before imposing life without parole on a juvenile homicide offender." (*People v. Gutierrez, supra,* 58 Cal.4th 1354, 1388-1389; quoting *Miller, supra*, 567 U.S. at p. ____, 132 S.Ct. at pp. 2468-2469.)

Our Supreme Court observed:  "To be sure, not every factor will necessarily be relevant in every case. For example, if there is no indication in the presentence report, in the parties' submissions, or in other court filings that a juvenile offender has had a troubled childhood, then that factor cannot have mitigating relevance. But *Miller* 'require[s] [the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' [Citation.]" (*Gutierrez, supra*, 58 Cal.4th at p. 1390.)

Our prior review of the record below demonstrated "the sentencing judge imposed LWOP based on his understandable sympathy for the victim, whom he described as 'a hard working, young man from Mexico' who held several jobs and 'obviously hoped for

3

more than life gave him.' Also, the sentencing judge imposed LWOP based on his judgment the evidence showed [petitioner] was the shooter, stating, 'There is no question in my mind, whatsoever, that this defendant . . . shot the victim. He had the gun before. He had the gun afterwards. And since then he has distinguished himself in custody by formulating plans for an escape, apparently[,] and evidencing no remorse whatsoever.' For those reasons, the court stated, 'I can see no reason to, in effect, do anything to thrust this man back in society.' " (Slip opn., pp. 5-6, fn. omitted.) We concluded: "Patently, prior to imposing LWOP, the sentencing judge did not focus on the factors now constitutionally mandated under *Miller,* in particular the offender's 'chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.' [Citation.] In sum, because *Miller* refocused the sentencing decision on 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison' [citation] and the trial court did not consider the 'hallmark features' of youth now mandated under *Miller* [citation], we conclude habeas relief is warranted in this case." (Slip opn., p. 6, fn. omitted.)

Further re-review of the record, including the amenability determination report and the probation report in light of the parties' supplemental briefs, confirms our original view. Although these reports included some factual information relevant to the *Miller* inquiry about petitioner's childhood, juvenile record, and the circumstances of the offense, it is clear the trial court did not view or analyze that information through the prism *Miller* now requires. For as the People's sentencing memorandum argued, such analysis was beside the point in 1994: "If the imposition of the punishment of death for 16 or 17 year old minors found guilty of capital murder does not violate federal guarantees against cruel and unusual punishment, it inevitably follows that the lesser punishment of life in prison without the possibility of parole does not constitute cruel and unusual punishment." A remand for resentencing is required by *Gutierrez* and *Miller*.

4

**DISPOSITION**

The petition for habeas corpus is granted.  Petitioner's LWOP sentence is vacated and the matter is remanded for resentencing.


_____
Dondero, J.


We concur:


_____
Margulies, Acting P.J.


_____
Banke, J.